UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEED SERVICES, INC., a California corporation,<br><br>      Plaintiff,<br><br>    v.<br><br>WINSOR GRAIN, INC., a Minnesota corporation, WILLIAM L. COOK, an individual, and DOES 1 through 35, inclusive,<br><br>      Defendants. | CASE NO. 1:10-CV-2185 AWI GSA<br><br>ORDER RE: PRELIMINARY INJUNCTION |

Plaintiff has obtained a temporary restraining order against Defendants prohibiting them from infringing upon certain trademarks; Plaintiff now seeks a preliminary injunction. Defendants oppose the motion. The court grants Plaintiff's request for a preliminary injunction.

**I. History**

Plaintiff Seed Services, Inc. ("Seed Services") produces and supplies seeds for agricultural production. Defendant Winsor Grain, Inc. ("Winsor Grain") sells Seed Services's products in the Middle East. Defendant William Cook ("Cook") is the owner and president of Winsor Grain (collectively "Defendants"). On August 30, 2010, Seed Services and Defendants entered into a contract whereby Seed Services agreed to buy certain assets of Winsor Grain ("Contract"). In key part, Winsor Grain agreed to give Seed Services certain trademarks

1

registered in the United States (the use of the name "California Gold" among others), to turn over its customer list, to have Cook act as Seed Services's agent for nine months, and to cease all new sales to the Middle East. In return, Seed Services agreed to pay Winsor Grain a total of $1,000,000.

Seed Services filed suit on November 22, 2010, alleging Defendants violated the Contract by selling alfalfa seed to Erzam Agricultural Trading Co. in Saudi Arabia ("Erzam"), one of the customers on the list. Recently, Seed Services also alleged that Cook has sought to sell alfalfa seeds grown in Australia to Erzam under the brand "California Gold". Seed Services originally sought a temporary restraining order in December 2011; the motion was denied as it concerned trademark violations, which was a claim that was not part of this case. Seed Services filed an amended complaint that alleged violations of the Lanham Act. Seed Services made a motion for temporary restraining order and preliminary injunction. Doc. 66. The temporary restraining order was granted pending resolution of the preliminary injunction motion. Doc. 70. Defendants filed an opposition to the motion. Doc. 75. The court ordered additional briefing. Doc. 80. The parties complied and the matter was taken under submission without oral argument.

## II. Legal Standards

A plaintiff seeking a preliminary injunction must establish: (1) that he/she is likely to succeed on the merits, (2) that he/she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his/her favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 18 (2008). "Injunctive relief...must be tailored to remedy the specific harm alleged." Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011).

## III. Discussion

In relevant part, the Contract provided that Seed Services would acquire Winsor Grain's customer list and the associated right to sell to those customers in the Middle East and certain tradenames or trademarks to Seed Services, including: (a) U.S. Trademark Registration No.

2

3,909,586, the "California Gold" mark; (b) U.S. Trademark Registration No. 2,755,555, the "Frisco" mark; (c) U.S. Trademark Registration No. 2,958,765, the "Pacific Grain and Seed Brand" mark; (d) U.S. Trademark Registration No. 2,982,806, the "Circle and Plant Design" mark; (e) U.S. Trademark Registration No. 2,986,619, the "Red Panic" mark; and (f) U.S. Trademark Registration No. 2,987,117, the "PSW and Design" mark. Doc. 66, Part 2, Ex. 2, (21-25 of 34). The "California Gold" mark was filed with the U.S. Patent and Trademark Office on May 27, 2004 and registered on January 25, 2011; it is described as "Mark: California Gold. Drawing Type: An illustration drawing with word(s)/letter(s)/number(s) in stylized form." Doc. 66, Part 2, (23 of 34). A picture shows the trademark consists of an image which includes the strongly bolded words "California Gold" between two stylized vertical stalks of grain; there is additional text in smaller font size describing the product as "certified alfalfa seed," a "Product of U.S.A.," and other information. See Doc. 66, Part 3, Ex. 5, (16 of 18). The trademark was recorded as assigned to Seed Services on September 23, 2011. Doc. 66, Part 2, (23 of 34).

In this motion, Seed Services alleges Defendants have attempted to infringe on the "California Gold" mark by trademarking the name "California Gold" in Australia and making inquiries about selling alfalfa seed under that name to Seed Services's customers in Saudi Arabia. The alleged impending infringement concerns Cook and the Cook Land and Cattle Pty., Ltd. ("CLAC"). CLAC applied for the "California Gold" mark with the appropriate Australian government entity on April 1, 2011 and was registered on November 2, 2011; it is described as "Indexing Details - Word Constituents: California Gold. Indexing Details- Image Constituents: Grain, Ear + Stylized Two." Doc. 66, Part 3, Ex. 6, (17 of 18). A picture shows that the trademark consists of an image with the strongly bolded words "California Gold" between two stylized vertical stalks of grain. Doc. 66, Part 3, Ex. 6 (18 of 18). A comparison between the American and Australian trademarks shows that the vertical stalks of grain are identical and the words "California Gold" share the exact same font.

Defendants argue that CLAC is not a party to this case and the court has no jurisdiction over CLAC, and they can not be held responsible for CLAC's actions. Cook claims "2. As of April of 2010, CLAC is wholly owned by the William L. Cook Revocable Trust. It is an

Australian company with its principal place of business in South Australia. CLAC's primary purpose is to make and oversee various financial investments using assets belonging to the William L. Cook. CLAC does not perform any of its business within the boundaries of the United States. 3. I am only one of several directors for CLAC, but I am not the president. The management and operational decisions for CLAC are made by an officer or agent of the company who resides in Australia." Doc. 81, Cook Declaration, 1:24-2:3.  Seed Services has provided documents from the Australian Securities and Investments Commission which shows that Cook is the sole owner of CLAC and that he and his wife are two of the three directors of the company. Doc. 83, Part 1, Exs. A and B (4-18 of 20).  CLAC is not a party to this case but Cook is plainly responsible for CLAC's actions.  He admits that "I suggested that CLAC register the Australian trademark 'California Gold.'" Doc. 81, Cook Declaration, at 2:18-19.  CLAC's actions must be imputed to Cook.

      Gamal Ashour, Seed Services's sales broker, states "Mr. Cook has approached Australian suppliers about selling 'CUF' alfalfa seeds to Saudi Arabian customers under the 'California Gold' brand." Doc. 66, Part 6, Ashour Declaration, at 2:19-20 (4 of 12).[1]  The inquiries were quite specific.  Cook sent an e-mail to at least two people representing Australian growers in November 2011 proposing to sell Australian seed stating "We will use the California Gold bag....If you can come up with one container, we could introduce it into [Saudi Arabia], giving us a one year jump." Doc. 66, Part 3, Ex. 2, (9 of 18).  Cook also sent an e-mail to Erzam, an existing Seed Services customer, on December 28, 2011 stating "There is a possibility that a good line of certified alfalfa seed will come out of Australia this year. It will be in a bag, California Gold, the added phrase: 'American genetics for the best quality, Australian grown for economic.' If you like this idea, let me know. You might like an exclusive on this. Let's keep this to ourselves for the time being. OK?" Doc. 66, Part 2, (33 of 34).  The court notes that these e-

---

[1]Defendants object to several pieces of Seed Services's evidence, alleging it is based on hearsay. Doc. 77.  "A district court may, however, consider hearsay in deciding whether to issue a preliminary injunction." Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009), citations omitted.

mail were apparently sent by Cook himself and not another representative of CLAC.

Cook states, "I have not used the Australian trademark nor have I made any sales or attempted sales using that trademark." Doc. 81, Cook Declaration, at 2:21-22. Defendants argue "All Plaintiff can arguably show is that Defendants made inquiries. That does not support an injunction." Doc. 75, Opposition, at 2:16-17. While it may be true that Defendants have not consummated a sale to Saudi Arabia using the "California Gold" brand, the clear evidence shows that Defendants have the capability and intent to do so and are taking active measures to covertly accomplish such sales within a matter of weeks or months. In the trademark context, a showing of imminent infringement is sufficient. See American Bd. of Psychiatry & Neurology v. Johnson-Powell, 129 F.3d 1, 4 (1st Cir. 1997) (affirming denial of preliminary injunction where "imminent infringement" not shown).

Seed Services also vaguely suggests that a preliminary injunction should issue based on the claim that Defendants are in violation of a non-compete clause contained in the Contract "by selling alfalfa seed to any country in the Middle East." Doc. 66, Part 5, Brief, at 15:13. Defendants challenge that the Contract does not include a valid non-compete clause. Doc. 75, Opposition, at 6:1-7. Whether or not a preliminary injunction should issue based on violation of a non-compete clause has not been adequately raised or briefed by Seed Services.

**A. Probability of Success on the Merits**

"[I]n order to show a probability of success in the causes of action for trademark infringement, false designation of origin and unfair competition, [parties] need show that a likelihood of confusion exists." Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985), citations omitted. Likelihood of confusion is determined by an eight factor test: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines." AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).

Seed Services provides the statement of Charles Deatherage, its own officer, who states "The 'California Gold' mark and its goodwill was a very important part of the transaction because it is a trusted brand of seed in the Middle East, specifically with Seed Services' customers in the Kingdom of Saudi Arabia. 'California Gold' seeds have a reputation for quality with its buyers in the Middle East." Doc. 66, Part 3, Deatherage Declaration. 2:17-20.  This is weak evidence concerning how well the trademark is known.  However, the trademark is strongly distinctive as it identifies the commercial source of the alfalfa seed rather than describing the fact that the product is alfalfa seed. See Classic Foods Int'l Corp. v. Kettle Foods, Inc., 2006 U.S. Dist. LEXIS 97200, *36 (C.D. Cal. Mar. 2, 2006) ("Suggestive, arbitrary, and fanciful marks receive automatic protection because they serve to identify a particular product's source, as opposed to describing the product itself"), citing Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005).  As discussed above, the trademarks are almost identical. The product is the same: alfalfa seed.  As the market appears to be wholesale transactions of alfalfa seed across large distances, the buyers are likely to be sophisticated parties who exercise a fair degree of care.  Seed Services disputes this conclusion, claiming that the farmers who ultimately plant the alfalfa seed are the relevant market. Doc. 79, Reply, at 4:23-5:2.  However, Seed Services has not provided any evidence to support that assertion so for the purposes of this motion, the intermediary buyers are considered the market.  The marketing channel used by the two is identical as Cook directly approached Erzam.  Seed Services admits there is not yet evidence of actual confusion.  At this point, it is clear that Cook deliberately chose to use the "California Gold" brand to associate his product with Seed Services's alfalfa seed.  Taken as a whole, these factors suggest that Seed Services will prevail on the merits of the Lanham Act claim.  The fact that Cook used to sell American "California Gold" brand alfalfa seed in the past adds to the likelihood of confusion notwithstanding the fact that the buyers are assumed to be sophisticated parties. See Church of Scientology International v. Elmira Mission of Church of Scientology, 794 F.2d 38, 44 (2nd Cir. 1986) ("A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder. When such party, as defendants here, loses its

1  authorization yet continues to use the mark, the potential for consumer confusion is greater than
2  in the case of a random infringer. Consumers have already associated some significant source
3  identification with the licensor. In this way the use of a mark by a former licensee confuses and
4  defrauds the public"). Seed Services will likely prevail on the merits.

**B. Irreparable Harm**

The longstanding standard for preliminary injunctions in the trademark context presumed irreparable injury if likelihood of success on the merits were shown. See Brookfield Communs., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1066 (9th Cir. 1999), citing Metro Publ'g, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993). More recent precedent has cast doubt on that presumption. Namely, eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006) and Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 981 (9th Cir. 2011) rejected similar presumptions in the patent and copyright contexts. Together with the recent restatement of the overall preliminary injunction standard in Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008), the law is in flux. While acknowledging Winter but not considering eBay, the Ninth Circuit stated, "Because the court found a likelihood of success on the merits, it reasonably presumed irreparable injury," approving of the older standard. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009). However another panel almost simultaneously approved of a district court opinion which rejected that presumption, stating "the district court correctly identified the legal standards" in an unpublished opinion. Cytosport, Inc. v. Vital Pharms., Inc., 348 Fed. Appx. 288, 289 (9th Cir. 2009), affirming CytoSport, Inc. v. Vital Pharms., Inc., 617 F. Supp. 2d 1051 (E.D. Cal. 2009). The standard in the Ninth Circuit with respect to trademark is not clear. See SunEarth, Inc. v. Sun Earth Solar Power Co., 2012 U.S. Dist. LEXIS 13506, *43 (N.D. Cal. Feb. 3, 2012) ("the continuing vitality of this presumption in trademark infringement cases is not clear"). Given the overall trend of the case law, the court will not assume the existence of irreparable injury due to a showing of success on the merits.

"Evidence of threatened loss of prospective customers or goodwill certainly supports a

finding of the possibility of irreparable harm." Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001). In this case, Cook has offered Erzam, an existing Seed Services customer, an exclusive supply of "California Gold" alfalfa seed. Defendants argue that "there is no evidence that Plaintiff's customers intend to purchase any seed from CLAC or that the buyers confuse the California and Australian seed. Indeed, the opposite seems to be more likely since those customers contacted Plaintiff as soon as inquiries were made." Doc. 75, Opposition, 5:13-16. However, Cook's e-mail to Erzam offering "California Gold" seed was not provided by Erzam to Seed Services, but rather provided to Seed Services in discovery. Doc. 66, Part 2, Belden Declaration, 4:5-7. "In trademark cases, courts have found irreparable harm in the loss of control of a business' reputation, a loss of trade and loss of goodwill. Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners. Thus, if another person infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control. A trademark owner's loss of the ability to control its marks, thus, creates the potential for damage to its reputation." CytoSport, Inc. v. Vital Pharms., Inc., 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009), citing Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195-96 (3rd Cir. 1990). If Defendants are permitted to go ahead with their plan to sell "California Gold" alfalfa seeds to Seed Services's customers, Seed Services will have lost control of its business reputation. The likelihood of irreparable harm is established.

**C. Balance of Equities, Public Interest, and Bond Amount**

The equities fall firmly in Seed Services's favor. Seed Services promptly sought injunctive relief as soon as Defendants' actions were known. Defendants purposefully chose the Australian trademark to copy the American trademark. See Cadence Design Sys. v. Avant! Corp., 125 F.3d 824, 829 (9th Cir. 1997) ("a defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities"). In this case, Cook technically disclaims any interest in using the "California Gold" mark: "I have not used the Australian trademark nor have I made any sales or attempted sales

using that trademark." Doc. 81, Cook Declaration, at 2:21-22.  So, preventing him from doing so should not be much of a burden at all.  Thus, the $25,000 bond Seed Services provided to support the temporary restraining order is sufficient to support a preliminary injunction.

The public interest in preventing trademark infringement is avoiding confusion in the marketplace. See <u>CytoSport, Inc. v. Vital Pharms., Inc.</u>, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009).  Defendants assert that "no product has been distributed at all. There have only been inquiries made in Saudi Arabia by way of an Australian company. There is simply no public interest in such overseas activity." Doc. 75, Opposition, at 8:17-19.  The court does not see why prevention of market confusion in Saudi Arabia is not a valid public interest.  Putting that aside, "the public has an interest in requiring parties to honor their contractual obligations." <u>Dunkin' Donuts Franchised Rests. LLC v. ABM Donuts, Inc.</u>, 2011 U.S. Dist. LEXIS 139074, *23 (D.R.I. Oct. 4, 2011).  Defendants sold the "California Gold" trademark to Seed Services.  Protecting the enjoyment of that trademark is a valid public interest.

**D. Extraterritorial Reach**

This injunction involves activity outside the United States.  To support this sort of injunction under the Lanham Act, "there are three criteria that must be considered: (1) there must be some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; (3) the interest of and links to American foreign commerce must be sufficiently strong in relation to those of other nations." <u>Ocean Garden, Inc. v. Marktrade Co.</u>, 953 F.2d 500, 503 (9th Cir. 1991).  Seed Services is an American company selling goods produced in the United States to foreign customers.  The crowding out of Seed Services's sales to customers in Saudi Arabia meets the first factor and the monetary injury from those foregone sales meets the second factor. The third factor is further subdivided into seven considerations: "(1) Degree of conflict with foreign law....(2) Nationality of the parties....(3) Extent to which enforcement is expected to achieve compliance....(4) Relative significance of effects on U.S. as compared to elsewhere....(5) Explicit purpose is to harm U.S. commerce....(6) Foreseeability of such effect....(7) Relative importance of violations within the

U.S." Ocean Garden, Inc. v. Marktrade Co., 953 F.2d 500, 503-4 (9th Cir. 1991). An injunction against use of the Australian trademark to sell to the Middle East does not create a conflict with Australian trademark law: "For at the most defendants' Mexican registration of plaintiff's mark can have no greater effect than to confer upon defendants a license or permission to use the mark in Mexico. It is not even contended that any public policy of Mexico requires defendants ever to exercise that license. So there could be no affront to Mexican sovereignty or Mexican law if, as between the parties, this court should declare that defendants may not so use their license under Mexican law as to injure plaintiff's foreign commerce conducted from the United States." Ramirez & Feraud Chili Co. v. Las Palmas Food Co., 146 F. Supp. 594, 602 (S.D. Cal. 1956), adopted and summarily aff'd, 245 F.2d 874 (9th Cir. 1957). In this case, Defendants have not shown that any Australian or Saudi Arabian court decision has touched upon the trademarks in question. Further, Cook is an American citizen who resides in Florida and Winsor Grain is an American company. The preliminary injunction should be fully effective as Cook is a party to this case and bound to follow court orders. As explained above, CLAC is not a party to this case but CLAC's actions must be attributed to Cook; he must answer for those actions if CLAC violates this preliminary injunction order. The relative impact on the United States and Australia is ambiguous. However, the potential infringement would purposefully harm Seed Services's commerce in a significant manner. The facts of this case support an injunction that restricts the overseas activity of Defendants.

**IV. Order**

1. William L. Cook, Winsor Grain, Inc., or their agents, employees, or persons acting in concert or participation with them, either directly or through another entity including but not limited to Cook Land & Cattle Pty. Ltd., are temporarily restrained and enjoined from doing the following:

    a. Using for any purpose the name "Winsor Grain";

    b. Using for any purpose any tradenames or trademarks conveyed to Seed Services, including: (a) U.S. Trademark Registration No. 3,909,586, the "California Gold" mark; (b) U.S.

1 Trademark Registration No. 2,755,555, the "Frisco" mark; (c) U.S. Trademark Registration No. 2,958,765, the "Pacific Grain and Seed Brand" mark; (d) U.S. Trademark Registration No. 2,982,806, the "Circle and Plant Design" mark; (e) U.S. Trademark Registration No. 2,986,619, the "Red Panic" mark; and (f) U.S. Trademark Registration No. 2,987,117, the "PSW and Design" mark. (Collectively these tradenames and trademarks and associated intellectual property rights, along with the name "Winsor Grain," are the "Tradenames and Trademarks.")

    c.    Importing or attempting to import seeds to the Kingdom of Saudi Arabia or any other country in the Middle East using any of the Tradenames and Trademarks or any confusingly similar names or marks, including but not limited to the "California Gold" name and trademark registered in Australia by a company called "Cook Land and Cattle Pty. Ltd."

    d.    Selling or attempting to make sales of seeds utilizing any of the Tradenames and Trademarks or any confusingly similar marks to customers located in the Kingdom of Saudi Arabia or any other country in Middle East.

    e.    Contacting any persons in the Middle East for the purposes of making sales of seeds to the Middle East under any of the Tradenames and Trademarks or any confusingly similar names or marks.

2. Plaintiff has posted a bond in the amount of $25,000.00 as security for this preliminary injunction, which meets the requirement of Fed. Rule Civ. Proc. 65(c).

3. The previously scheduled hearing on Friday, April 13, 2012 is vacated.

IT IS SO ORDERED.

Dated:   April 11, 2012

                                CHIEF UNITED STATES DISTRICT JUDGE